UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXIS MARIE LYNEMA,

    Plaintiff,

v.                                                                      Case No. 1:22-cv-906

                                                                             HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for DIB and SSI on April 25, 2019, alleging a disability onset date of June 28, 2015. PageID.47. Plaintiff identified her disabling conditions as: cognitive impairment; learning disabilities; anxiety; attention deficit hyperactivity disorder (ADHD); migraines; Leiden Factor V[1]; depression; and mood disorder. PageID.325. Plaintiff completed the 12th grade and had no past relevant work.[2] PageID.65, 327. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 29, 2021. PageID.47-67. This decision, which was later approved by the Appeals

---

[1] The ALJ identified this condition as "heterozygous Factor V Leiden mutation". PageID.50. The Court notes that the ALJ did not consider this to be a severe impairment stating, "the medical evidence of record does not show that the claimant reported experiencing symptoms of this condition." *Id*.

[2] The Court notes that plaintiff was 18 years old on the alleged disability onset date. PageID.50, 65.

1

Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 28, 2015, and that she met the insured status requirements of the Social Security Act through September 30, 2021. PageID.50.[3] At the second step, the ALJ found that plaintiff has severe impairments of an adjustment disorder with mixed disturbance of emotions and conduct; ADHD; generalized anxiety disorder; major depressive disorder; bipolar disorder; borderline intellectual functioning; mathematics disorder; disorder of written expression; and cannabis abuse. PageID.50. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.52.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, and apply simple information; can have occasional interaction with supervisors and coworkers, but no tandem or cooperative tasks; no work involving direct interaction with the public; can concentrate, persist, and maintain pace to perform simple,

---

[3] The ALJ found while plaintiff had earnings in 2016, 2017, 2018, 2019, and 2020, her work activity did not rise to the level of substantial gainful activity. PageID.50.

routine, and repetitive tasks and make simple work-related decisions, but not at a production rate pace; no work requiring mathematical calculations or writing as a regular part of the job duties; and can adapt to and tolerate no more than occasional changes in a routine work setting.

PageID.56.  The ALJ also found that plaintiff has no past relevant work.  PageID.65.[4]

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy.  PageID.66.  Specifically, the ALJ found that plaintiff could perform the requirements of:  garment sorter (230,000 jobs), laundry worker (300,000 jobs), and housekeeper (50,000 jobs). PageID.66.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 28, 2015 (the alleged onset date) through September 29, 2021 (the date of the decision).  PageID.67.

### III.   DISCUSSION

Plaintiff set forth two issues on appeal.

**A. Substantial evidence does not support the ALJ's RFC determination because the ALJ did not properly consider the medical opinion evidence.**

Here, plaintiff contends that the ALJ's RFC determination is flawed because he did not properly consider an evaluation by examining psychologist Jessica Manning, Ph.D.  Plaintiff's Brief (ECF No. 18, PageID.1094).  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  *See* 20 C.F.R. §§ 404.1545 and 416.945.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In

---

[4] In reaching this determination, the ALJ found that, "[a]lthough the claimant has worked in the past 15 years, this work activity did not rise to the level of substantial gainful activity."  PageID.65.

determining the RFC, the ALJ considers impairments that are both "severe" and "not severe," *see* 20 C.F.R. §§ 404.1545 and 416.945, "based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. §§ 404.1520(e) and 416.920(e).  The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."  *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. §§ 404.1520c(b) and 416.920c(b).

In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).  The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).

6

Here, the ALJ addressed Dr. Manning's opinion (Exh. 14F) at both the third and fourth steps of the sequential evaluation. At the third step, the ALJ considered the doctor's opinion in determining whether plaintiff met the "paragraph B" criteria of Listing 12.05 (intellectual disorder), *i.e.*, plaintiff's limitations in the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. PageID.52-54.

In finding that plaintiff had a moderate limitation in understanding, remembering, or applying information, the ALJ addressed Dr. Manning's opinion as follows:

> In July 2021, the claimant had some difficulty answering opened ended questions and putting her thoughts and feelings into words (Ex. 14F/5). The results of the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV), which were thought to be valid in the context of anxiety and marijuana use, showed a verbal comprehension index of 81, a perceptual reasoning index of 69, a working memory index of 74, a processing speed index of 81, and a full-scale IQ score of 70 (Ex. 14F/5 and 10). Testing also showed elementary math skills with slowness on testing of executive functioning; however, at that time, Jessica Manning, Ph.D., an evaluating neuropsychologist, reported the claimant's reading and spelling achievement were at or near expectations for her age level (Ex. 14F/6-8). . . She reported taking medication without reminders in July 2021 (Ex. 14F/3-4).

PageID.52-53.

In finding that plaintiff had a moderate limitation in interacting with others, the ALJ addressed Dr. Manning's opinion as follows:

> During evaluations, the claimant, at times, had abnormalities of mood and/or affect (*See* Ex. 1F/1-3; 3F/3, 8, 16; 10F/4, 14; 13F/10, 22; 14F/5; 17F/16; and 19F/31-43, 47-51, 57-64, 112, 124, 138). . . Dr. Manning indicated the claimant is unable to advocate for herself (Ex. 14F/8). However, during evaluations, the claimant appeared cooperative, interactive, friendly, and/or engaged with appropriate behavior and/or good eye contact noted on multiple occasions (*See, e.g.*, Ex. 1F/1-3; 3F/3, 8 16; 10F/4, 8, 13-14, 18; 13F/4, 10, 16, 21-22; 14F/5; 17F/3, 9; and 19F/1-148). . . In July 2021, during neuropsychological evaluation, she effectively engaged in reciprocal conversations and responded appropriately to jokes and humor (Ex. 14F/5).

PageID.53.

In finding that plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ addressed Dr. Manning's opinion as follows:

> In July 2021, neuropsychological testing showed a slow pace on testing of executive functioning with difficulty tracking two sets of information simultaneously (Ex. 14F/7). Dr. Manning noted the claimant needed encouragement to work hard and that testing suggested the claimant had extremely poor immediate visual attention and low average auditory attention (Ex. 14F/5-7).

PageID.53.

Finally, in finding that plaintiff had a moderate limitation in adapting or managing oneself, the ALJ addressed Dr. Manning's opinion as follows:

> The claimant and/or her mother asserted she has panic attacks, appetite and sleep changes, anger, inattention to personal care tasks, and difficulty maintaining a schedule, managing money, making decisions, and handling stress and changes in routine, with receipt of job coaching (Ex. 3E; 5E; 7E: and Testimony). The record documents ongoing use of marijuana despite recommendations to quit because of negative effects on depression and anxiety (See, generally, Ex. 3F; 10F; 13F; and 17F). During evaluations, the claimant, at times, had abnormalities of mood and/or affect (See Ex. 1F/1-3; 3F/3, 8, 16; 10F/4, 14; 13F/10, 22; 14F/5; 17F/16; and 19F/31-43, 47-51, 57-64, 112, 124, 138). . . In July 2021, Dr. Manning stated the claimant seemed to lack insight and judgment (Ex. 14F/7; See also Ex. 2F/12). . . The medical evidence of record does not document ongoing suicidal ideation, self-harmful behavior, homicidal ideation, or psychosis during the period since the alleged onset date (See, generally, Ex. 1F-20F). . . In July 2021, she stated her emotions had largely stabilized (Ex. 14F/3). . . She also reported caring for a cat, engaging in hobbies, helping with household chores, shopping online, preparing simple meals, with no difficulty bathing, caring for her hair, shaving, feeding herself, or using the toilet noted in February 2020 (See Ex. 5E/2-5; 11F/5-9; and 14F/3).

PageID.54.

The ALJ also considered the doctor's opinion in determining whether plaintiff met the "paragraph C" criteria of Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). In evaluating this criteria, the ALJ considered

whether plaintiff's mental disorder is "serious and persistent".[5] PageID.54-55. The ALJ considered the following aspects of Dr. Manning's opinion:

> I have also considered whether the "paragraph C" criteria of 12.04 and 12.06 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record did not indicate evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting that was ongoing and that diminished the symptoms and signs of the claimant's mental disorder (see 12.00G2b); and a minimal capacity to adapt to changes in the claimant's environment, or to demands that were not already part of the claimant's daily life (see 12.00G2c). Although the medical evidence of record documents medication and some outpatient therapy, the record shows no emergency room visits, extensive case management, partial hospitalizations, or inpatient hospitalizations during the period since the alleged onset date, nor does it show that she has a guardian or lives in an assisted living facility (*See, generally*, Ex. 1F-20F). The claimant reported caring for a pet, performing some household chores, shopping online, and preparing simple meals daily, noting in February 2020 that she could pay bills, handle a savings account, and use a checkbook/money order (Ex. 5E/2-5). She has also reported having boyfriends, caring for a pool, and going to a bar to play pool, with the record showing she stated in July 2021 that she took medication without reminders (Ex. 2F/44; 11F/5-9; 14F/3; and 19F/89, 128, 135[.]

PageID.55.

Dr. Manning's opinion included seven recommendations for plaintiff.[6] In evaluating plaintiff's RFC at the fourth step, the ALJ found Dr. Manning's opinion "mostly persuasive" with respect to the doctor's employment recommendations:

---

[5] The "paragraph C" criteria is set forth in Listings 12.04 and 12.06 as follows:

"C. Your mental disorder in this listing category is 'serious and persistent;' that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both: 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c)."

[6] The recommendations are summarized as follows: (1) continued participation in outpatient therapy and psychotropic medication to develop greater emotional stability; (2) apply for SSI/disability, noting that plaintiff "may be able to more fully support herself at some point"; (3) appoint a guardian because plaintiff is not yet ready to make effective decisions for herself; (4) provide community living supports at home or place her in an adult foster care home; (5) employment limitations; (6) learn how to drive; and, (7) develop healthy habits, which include reducing her cannabis use from multiple times daily to one or two times a week to decrease the cognitive impact of the cannabis use. Exh. 14F/8-9, PageID.698-699.

> In July 2021, Dr. Manning opined that when considering employment, the claimant would function best in jobs that are hands on, routine, repetitive, and predictable (Ex. 14F/9). She assessed the claimant can learn specific processes and follow specific rules, provided that they are made explicit (Ex. 14F/9). Dr. Manning stated the claimant will need direct training and supervision while learning new tasks, and she will need more time, training, and supervision to learn these tasks than most other adults (Ex. 14F/9).
>
> Dr. Manning had the opportunity to examine the claimant and to administer testing. She has specialized training and experience in the field of neuropsychology. Her assessment, to the extent it suggests the claimant is capable of simple routine tasks and that it does not expressly state or imply that the claimant would be incapable of simple, unskilled work, is generally well supported by her own examination findings. As demonstrated above, Dr. Manning administered the WAIS-IV, which showed results consistent with borderline intellectual function, with additional testing documenting elementary school level math skills, slowness on testing of executive functioning, reduced attention, and impaired insight and judgment, although she also reported the claimant could effectively engage in reciprocal conversations and that she had spelling and reading skills at or near expected levels (*See, generally*, Ex. 14F). Her assessment, as interpreted above, is also consistent with the longitudinal treatment record (*See, generally*, Ex. 1F-20F). However, Dr. Manning did not have the opportunity to treat the claimant or to evaluate her functioning over a period of time. To the extent that her recommendations can be interpreted as suggesting greater limitations that assessed, such as sheltered work, such interpretations are not consistent with the longitudinal record. As demonstrated above, during evaluations with treating providers, the claimant presented with unremarkable findings related to attention, concentration, memory, executive and intellectual functioning, insight, judgment, impulse control, dress, appearance, thought processes and content, abstraction, associations, eye contact, behavior, and attitude, with no evidence of ongoing suicidal ideation, homicidal ideation, or psychosis (*See, generally*, Ex. 2F-3F; 10F; 12F-13F; 17F; and 19F). Accordingly, based on the record as a whole, I find Dr. Manning's recommendations are mostly persuasive.

PageID.63-64.

Plaintiff points out that the ALJ's evaluation of Dr. Manning's opinion did not address some of the doctor's other recommendations. For example, Dr. Manning stated that it is unlikely that plaintiff will be able to independently financially support herself any time in the next few years, that plaintiff's mother be appointed her guardian, and that plaintiff receive community living support or be placed in an adult foster care home. *See* Plaintiff's Brief at PageID.1094-

1095. The Court notes that portions of Dr. Manning's opinion are internally inconsistent, *e.g.*, recommending employment limitations for plaintiff and that plaintiff apply for SSI/disability. PageID.698-699.

While Dr. Manning included a number of recommendations to address plaintiff's mental impairments, the doctor clearly expressed her opinion that plaintiff could perform a limited range of routine, repetitive, and predictable work. The ALJ found this opinion regarding plaintiff's ability to work as mostly persuasive and developed an RFC consistent with the limitations expressed in the opinion. PageID.56. Both the ALJ's evaluation of Dr. Manning's opinion and the RFC are supported by substantial evidence. Accordingly, this claim of error should be denied.

### B. The ALJ failed to properly assess plaintiff's subjective allegations.

Plaintiff contends that the ALJ did not properly address her subjective complaints and symptoms. When a claimant alleges disabling symptoms, the ALJ follows a two-step process for evaluating those symptoms. "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms" and, "[w]e evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 at *3-4 (Oct. 25, 2017). *See* 20 C.F.R. §§ 404.1529(c)(1) and (2); 416.929(c)(1) and (2).

The Commissioner also considers other evidence including:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board,

> etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

In her brief, plaintiff asks this Court to review the ALJ's RFC determination from PageID.58 through PageID.62, and challenges the ALJ's finding:

> that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

PageID.58. *See* Plaintiff's Brief at PageID.1099. Plaintiff contends that the ALJ committed numerous errors in evaluating her subjective complaints such as: finding that her subjective allegations are not consistent with the objective evidence; mischaracterizing the medical evidence; discrediting plaintiff's subjective allegations because of her "relatively conservative treatment" and "reported improvement with treatment"; discrediting plaintiff's subjective complaints based on her medical noncompliance; improperly addressing plaintiff's activities of daily living (ADLs); and, mischaracterizing plaintiff's ability to perform part-time work. *Id*. at PageID.1098-1104. [7]

Plaintiff's arguments go beyond the scope of this Court's "substantial evidence" review. In essence, plaintiff is asking the Court to perform a de novo review of the ALJ's evaluation of plaintiff's subjective complaints and inviting the Court to re-weigh the evidence and substitute its judgment for that of the ALJ. "The substantial-evidence standard . . . presupposes

---

[7] *See e.g.*, Plaintiff's Brief at PageID.1100-1103 (stating: that plaintiff's mental health treatment was not 'conservative and contesting the ALJ's decision to discredit plaintiff's subjective allegations because of her "relatively conservative treatment," history of quitting medications against her providers' advice, and noncompliance with recommendations to reduce or discontinue marijuana use; that the ALJ ignored some notes reflecting that plaintiff had panic attacks, increased isolation, increased irritability, and screamed at her mother; that plaintiff's symptoms waxed and waned, "often changing in reported intensity and severity from week to week"; and, while the ALJ noted that plaintiff could perform a number of ADLs (caring for a cat, household chores, vacuuming, laundry, cleaning her bathroom, riding a bicycle, swimming, watching television, shopping online, listening to music and audiobooks, playing online games, and making videocalls), plaintiff stated that "[n]othing in the record suggests that [plaintiff] can either complete these tasks or interact with others independently and appropriately on a sustained basis").

that there is a zone of choice within which the decision-makers can go either way, without interference by the courts." *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (internal quotation marks omitted).

> As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess: "If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."

*Ulman v. Commissioner of Social Security*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See Lipanye v. Commissioner of Social Security*, 802 Fed. Appx. 165, 171 (6th Cir. 2020) ("[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements"); *Reynolds v. Commissioner of Social Security*, 424 Fed. Appx. 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). In summary, plaintiff's claim of error related to the ALJ's evaluation of her subjective complaints amounts to a de novo review of the evidence and should be denied.

## IV. RECOMMENDATION

Accordingly, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: November 14, 2023                    /s/ Ray Kent
                                            RAY KENT
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).